**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

ISMAEL APONTE,

                    Plaintiff,

vs.                                                   Case No. 6:11-cv-700-ORL-31MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,

                    Defendant.
_____/

## **REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, it is recommended that the Commissioner's decision be **REVERSED** and **REMANDED.**

**I.    PROCEDURAL HISTORY**

On February 15, 1995, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB"). (Tr. 20). The Social Security Administration denied this application initially and on reconsideration. Id. An Administrative Law Judge ("ALJ") later re-reviewed Plaintiff's claim on October 21, 1996, finding Plaintiff disabled as of April 26, 1994. (Tr. 20, 47-52). Although a July 2000 continuing disability review

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal. See 28 U.S.C. §636(b)(1); Rule 72(b), Fed.R.Civ.P.; and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

("CDR") determined that Plaintiff's disability continued (Tr. 20), a December 20, 2005, CDR found Plaintiff's disability ceased on January 1, 2002, based on substantial gainful activity ("SGA") from work and self-employment (Tr. 20-21).

Plaintiff filed a request for reconsideration on January 6, 2006, arguing he did not engage in SGA. (Tr. 21, 179). The Social Security Administration ("SSA") subsequently denied Plaintiff's request for reconsideration. (Tr. 21). On June 6, 2007, Plaintiff filed a timely request for a hearing before an ALJ. (Tr. 10). Plaintiff, Plaintiff's wife, and Plaintiff's sister-in-law testified at the hearing. (Tr. 502-25). On March 31, 2009, ALJ Douglas Abruzzo issued a decision finding Plaintiff's disability ceased effective January 1, 2002, due to SGA from self-employment. (Tr. 18-26).

On March 31, 2009, Plaintiff requested the Appeals Council ("AC") review the ALJ's decision. (Tr. 7, 10-11). On February 25, 2011, the AC denied review. (Tr. 5-8). Plaintiff timely filed his Complaint in the U.S. District Court for review of the Commissioner's decision. (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff was found disabled on October 21, 1996 due to "chronic low back pain with disk disease at L4-L5 and L5-S1, radiculopathy at L4-L5 and L5-S1, thoracic outlet syndrome, chronic neck pain with C6 nerve root irritability, bilateral carpal tunnel syndrome, dysthymia, a somatoform disorder, and disability syndrome." (Tr. 51).

## B. Summary of Evidence Before the ALJ[2]

On December 20, 2005, Plaintiff's disability benefits ceased back to January 1, 2002, based on his substantial gainful activity from work and self-employment. (Tr. 20-21). A printout dated February 27, 2005, from the Florida Department of State, Division of Corporations, indicated that Plaintiff filed for an employer identification number for Aponte Vacation Home, Inc., as a Florida profit S-corporation, with Plaintiff as the registered agent, officer, and director. (Tr. 21, 203-07). Plaintiff's Internal Revenue Service ("IRS") federal income tax return Schedule E forms (Supplemental Income and Loss, from rental property) indicated that he had net losses of $21,546.00 in 2001, $12,604.00 in 2002, $15,858.00 in 2003, $2,872.00 in 2004, and $911.00 in 2007 for his S-corporation. (Tr. 21, 124-26, 126, 135-42, 151-52, 163-65, 445-47, 481-82).

In addition, Plaintiff's IRS tax return Schedule C forms for 2002, 2003, 2004, 2005, and 2007, revealed Plaintiff had income as a self-employed property manager.[3] (Tr. 22, 144, 429, 444, 462, 477). Plaintiff's Schedule C forms show Plaintiff had net earnings of -$4,988.00 in 1995, $84,225.00 in 1996, $8,138.00 in 1997, $7,232.00 in 1998, $0 from 1999 to 2001, $29,769.00 in 2002, $24,363.00 in 2003, $22,511.00 in

---

[2] The Court will limit its summary of the evidence to evidence related to Plaintiff's alleged substantial gainful activity because the issues presented in Plaintiff's appeal only involve that evidence.

[3] Plaintiff did not submit a copy of his 2006 IRS tax return.

-3-

2004, $16,098.00 in 2005, and $20,781.00 in 2007. (Tr. 22, 30, 45, 57, 82, 102, 116, 124-28, 132, 146, 429, 444, 462, 477).

On September 29, 2006, Plaintiff and his wife submitted signed statements to the SSA alleging Plaintiff had not been able to work in his business since he became disabled. (Tr. 23, 217-18). Plaintiff and his wife indicated Plaintiff's sister-in-law Luz Delia Alonzo ("Luz"), operated the business, with a little help from Plaintiff's wife. (Tr. 23, 217-18). Plaintiff and his wife claimed that Plaintiff only spent about five minutes per month signing papers for the business. (Tr. 23, 217-18). Plaintiff's wife said she answered the phone and referred potential customers to Luz, who in turn contacted the customers, made arrangements for the rental, and handled the finances. (Tr. 218).

Also, on September 29, 2006, Luz submitted a written statement to the SSA, stating that she had been helping Plaintiff run Aponte Vacation Homes since he became disabled. (Tr. 183). Luz claimed she was responsible for answering telephone calls, arranging rentals, and collecting rental payments. Id. She stated that she had been responsible for this since 1992 and received a salary for her work until October 4, 1999. Id. Since that date, she had not received any payment for her work. Id.

At the hearing before the ALJ, Plaintiff testified that he owned a business called Aponte Vacation Homes for seventeen or eighteen years. (Tr. 506). He stated that Luz was responsible for maintaining the business. (Tr. 508-11). Luz received a salary until 1998 or 1999, but presently was not receiving any payment for her services. (Tr. 510).

Plaintiff testified that he spends about five minutes a month signing checks for the business, but that is the extent of his involvement in the business. (Tr. 509).

Luz also testified at the hearing before the ALJ. (Tr. 515-22). She testified that she was the person responsible for speaking with potential renters and setting up vacation rentals on behalf of Aponte Vacation Homes. (Tr. 516). She further testified that she received a salary from 1994[4] to 1997, but then business slowed down and she was not currently receiving any payment for her services. Id. She stated she was doing this to help her sister and brother-in-law because they were "not in a good situation." (Tr. 517). Luz stated she currently was working only four or five hours per month. (Tr. 518-19). She further testified that she mainly ran the business by herself and would only ask Plaintiff occasional questions which he would spend three or four minutes answering. (Tr. 522).

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520. First, if a claimant is working at a substantial gainful activity, he is

---

[4] At the hearing, Luz testified that she mistakenly wrote "1992" in her previous statement, instead of "1994." (Tr. 517-18).

not disabled. 29 C.F.R. §§ 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. §§ 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. §§ 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

Here, as abovementioned, the ALJ issued a decision finding Plaintiff's disability ceased effective January 1, 2002, due to substantial gainful activity from self-employment. (Tr. 18-26). After using the countable income test to evaluate whether Plaintiff's disability ceased and after finding that Plaintiff, Plaintiff's sister-in-law, and Plaintiff's wife were not credible, the ALJ concluded that Plaintiff's net earnings from self-employment for 2002 to 2007 were, in whole, Plaintiff's countable income for SGA purposes. (Tr. 25-27). Thus, the ALJ determined that Plaintiff's disability was correctly ceased effective January 1, 2002. Id.

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**B.    Issues on Appeal**

Plaintiff raises two issues on appeal. Specifically, Plaintiff argues that the ALJ erred by: (1) failing to provide a fair and impartial hearing and decision (Doc. 20, pp. 5-9); and (2) failing to provide substantial evidence to support his decision that Plaintiff's disability ceased due to substantial gainful activity from self-employment (id. at 9-17). The Court will address each of these issues.

**1.    Whether Plaintiff received a fair and impartial hearing and decision.**

Plaintiff argues ALJ Abruzzo was biased or prejudiced when he decided Plaintiff's claim. (Doc. 20, pp. 5-8). Plaintiff further contends that the AC failed to properly handle his complaint of bias as required by the Commissioner's policy.[5] (Id. at 9). In response, the Commissioner argues that Plaintiff failed to demonstrate the ALJ's decision was influenced by bias and the AC correctly followed its procedures for handling claims of bias. (Doc. 27, pp. 15-20).

A presumption of honesty and integrity exists in those who serve as adjudicators for administrative agencies. See Schweiker v. McClure, 456 U.S. 188, 195-96 (1982). The burden of overcoming this presumption rests on Plaintiff. Id. at 195-96. A party must rebut the presumption by showing a conflict of interest or some other specific reason for disqualification. Id. The presumption can be overcome only with convincing

---

[5] The Court notes that Plaintiff does not specify the policy to which he is referencing.

evidence that "a risk of actual bias or prejudgment" is present.  Withrow v. Larkin, 421 U.S. 35, 47 (1975).  To be disqualifying, the alleged bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."  United States v. Grinnell Corp., 384 U.S. 563, 583 (1966).

Here, Plaintiff cites various arguments in support of his contention that he did not receive a fair and impartial hearing and decision.  First, Plaintiff argues that ALJ Abruzzo's biased is based in part on an internet article purportedly drafted by him which describes abuses observed in adjudicating disability cases and the challenges presented by the backlog of disability cases.  (Doc. 20, p. 6; Tr. 493).  Even if the Court could be certain the article was authored by ALJ Abruzzo, it does not demonstrate he was biased against Plaintiff in the disposition of this case.  See Brandt v. Astrue, No. 5:09-cv-97-Oc-GRJ, 2010 WL 746446, at *12 (M.D. Fla. Mar. 3, 2010) (finding that the article referenced in this matter did not demonstrate that ALJ Abruzzo was biased against the plaintiff in the disposition of her case).

Next, Plaintiff argues that ALJ Abruzzo's statistical approval rate reflects bias.  (Doc. 20, p. 7).  However, the statistics provided by Plaintiff in no way provide a basis to find bias on the part of ALJ Abruzzo in this action.  In addition, the Court notes that the ALJ afforded Plaintiff a hearing wherein Plaintiff has pointed to no comments, questions, or behavior showing bias or disrespect to Plaintiff or his claims.  (Tr. 502-27).

Third, Plaintiff argues that a United States Court of Claims ("USCC") decision from April 1975 involving ALJ Abruzzo demonstrates he was unqualified to be impartial and incapable of making a fair credibility determination. (Doc. 20, pp. 7-9). Again, Plaintiff has failed to specify any conduct by the ALJ in the USCC decision that was repeated or evident in the ALJ's decision or at the hearing in his case. Making an adverse credibility determination is not evidence of bias. (Tr. 522-25); see Lindsey v. Barnhart, 161 F. App'x 862, 870 (11th Cir. 2006).

Finally, Plaintiff argues that ALJ Abruzzo's bias or prejudice is demonstrated by his removal from office as an SSA ALJ in 2011.[6] (Doc. 20, pp. 8-9). However, ALJ Abruzzo's removal does not involve the facts in this case. In addition, none of the infractions charged against ALJ Abruzzo were the result of his conduct during hearings or problems with his decisions or with his ability to hear and decide this case. See (Doc. 20, Ex. A).

With regard to the AC's review of Plaintiff's complaint of bias, the Court finds that the AC correctly followed Social Security procedures for handling claims of bias on appeal. See 57 Fed. Reg. 49186–03, 49186 (Oct. 30, 1992). Plaintiff first presented his claim to the AC that he did not receive a full and fair hearing before the ALJ presiding over the case. 20 C.F.R. § 404.940. The AC then found that there was no evidence of bias or unfair treatment by the ALJ and addressed Plaintiff's complaint of bias in its

---

[6] Plaintiff did not present this evidence to the AC. The Court notes that this is extra-record evidence and the Court's review is limited to pleadings and the transcript of the record pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

-10-

notice of action. (Tr. 8). There, the AC noted that it had reviewed the allegations and the entire record, including the hearing testimony. Id, The AC also indicated that it had referred Plaintiff's allegation to another component to separately review the case and informed Plaintiff of the results of its review. Id. Thus, the Court finds the AC correctly followed its procedures for handling claims of bias on appeal. See 57 Fed. Reg. 49186–03, 49186 (Oct. 30, 1992).

> **2. Whether substantial evidence supports the ALJ's decision that Plaintiff's disability ceased due to substantial gainful activity from self-employment.**

Although Plaintiff had been found disabled, he was not entitled to a presumption of continuing disability. See 42 U.S.C. § 423(f). The Commissioner has established a sequential evaluation process to determine whether a beneficiary's disability has ceased. See 20 C.F.R. § 404.1594(f). The first step of the process requires a determination of whether the beneficiary is engaged in substantial gainful activity. See 20 C.F.R. § 404.1594(f)(1). If the beneficiary is engaged in SGA, the Commissioner will find that the beneficiary's disability has ended. See id. Thus, the relevant issue in this case is whether substantial evidence supports the ALJ's determination that Plaintiff engaged in SGA after he was awarded DIB.

An adjudicator must use 20 C.F.R. § 404.1575(e) to evaluate a self-employed person's work, if, when the self-employed person performed the work, the person has been entitled to DIB and has received such benefits for at least 24 months. 20 C.F.R. § 404.1575(e). Such an evaluation considers whether the person has

-11-

engaged in substantial gainful activity or demonstrated the ability to engage in SGA for the purposes of determining whether the person's disability has ceased due to work activity. 20 C.F.R. § 404.1575(e). The SSA uses the countable income test in 20 C.F.R. § 404.1575(e)(3) to determine whether the work a self-employed person does after the person has received DIB for at least 24 months is SGA or demonstrates the ability to do SGA. 20 C.F.R. § 404.1575(e)(2).

The countable income test involves comparing the countable income to the earnings guidelines in 20 C.F.R. § 404.1574(b)(2). 20 C.F.R. § 404.1575(e)(3). To be considered countable income, normal business expenses are deducted from the person's gross income to determine net income. 20 C.F.R. § 404.1575(c)(1). Once the ALJ determines net income, he or she deducts the reasonable value of any significant amount of unpaid help furnished by the self-employed person's spouse, children or others. 20 C.F.R. § 404.1575(c)(1). Additional expenses are also deducted from the net income. 20 C.F.R. § 404.1575(c)(1). The part of the self-employed person's income remaining after all of the applicable deductions represent the person's "countable income," that is, the actual value of the work performed. 20 C.F.R. § 404.1575(c)(1). An individual will be considered to have engaged in SGA under the countable income test if the person's monthly countable income averages more than the amounts described in section 404.1574(b)(2) for the months in which the person worked, *unless the evidence shows the person did not render significant services.* 20 C.F.R. § 404.1575(e)(3) (emphasis added). Under section 404.1574(b)(2), the relevant

monthly averages are, as follows: $780.00 in 2002, $800 in 2003, $810.00 in 2004, $830.00 in 2005, $860.00 in 2006, $900.00 in 2007, $940.00 in 2008, and $980.00 in 2009.

Plaintiff's Schedule C forms show that he had net earnings of $29,769.00 in 2002, $24,363.00 in 2003, $22,511.00 in 2004, $16,098.00 in 2005, and $20,781.00 in 2007. (Tr. 146, 429, 444, 462, 477). Thus, the ALJ properly found that Plaintiff's earnings exceeded the relevant monthly average; however, the ALJ must also consider whether Plaintiff engaged in significant services. (Tr. 26). Significant services constitutes either more than half the total time required for the management of the business or more than 45 hours a month regardless of the total management time required by the business. 20 C.F.R. § 404.1575(b).

Here, the ALJ found Plaintiff's testimony that he did not provide significant services to the business not credible. The ALJ cited four reasons for discrediting Plaintiff's testimony concerning his time spent working. First, the ALJ discredited Plaintiff's testimony because "the certificate of registration, ..., reflects that Luz is only the "c/o" (in care of) person for the business address, rather than the registered agent. Also, a printout, dated February 27, 2008, from the Florida Department of State, Division of Corporations, indicated that [Plaintiff] himself was the registered agent, officer, and director of Aponte Vacation Homes, Inc." (Tr. 23-24). Second, the ALJ discredited Plaintiff's testimony because "the claimant's tax returns for 1995 to 2007 indicated that he was the property manager." (Tr. 24). Third, the ALJ discredited

Plaintiff's testimony because "aside from the allegations made on September 29, 2006, the evidence fails to show that Luz operated, or even had any participation in, [Plaintiff's] business." Id. Finally, the ALJ discredited Plaintiff's testimony because "medical records from Dr. Rosillo in March 1995, Dr. Guttman in April 1995, and Dr. Taitt in July 2000, noted [Plaintiff's] report that he did not work after 1991 or 1992; but [Plaintiff] had the business as far back as 1992 or 1994." Id.

The fact that Luz was not the registered agent has no relevance on the issue of the amount of time Plaintiff worked. Similarly, Plaintiff's tax returns indicating that he was the property manager and medical records noting the date which Plaintiff stopped working offer no evidence on the issue of the amount of time Plaintiff worked. Moreover, the ALJ stated that Luz failed to submit copies of her IRS tax returns showing that she was employed by Plaintiff's business. (Tr. 24). This statement is not accurate, as Luz submitted copies of her tax returns which she had in her possession for the years 2004, 2005, 2006, and 2007. (Tr. 491). Plaintiff's attorney submitted these documents to the Office of Disability Adjudication and Review on November 21, 2008. Id. The ALJ's mistaken belief that they were not submitted may have affected his determination that Plaintiff was not credible.

Therefore, although the ALJ properly determined that Plaintiff received the appropriate net earnings to find that he engaged in substantial gainful activity, he failed to properly consider whether Plaintiff engaged in significant services for the business. See 20 C.F.R. § 404.1575(e)(3).

Plaintiff requests that this case be reversed and his benefits reinstated. The Eleventh Circuit has held that if the Commissioner's decision is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the decision with or without remanding the case for a rehearing. See Bowen v. Heckler, 748 F.2d 629, 636 (11th Cir. 1984). Here, the Commissioner's decision is not in clear disregard of the overwhelming weight of the evidence. Thus, reversal is not warranted.

**IV. CONCLUSION**

For the reasons stated herein, the undersigned finds the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards. Accordingly, after due consideration, it is hereby

**RECOMMENDED**:

The Commissioner's decision be **REVERSED** the case and **REMANDED** to the ALJ with instructions to: (1) properly consider whether Plaintiff engaged in significant services for Aponte Vacation Homes, Inc., and (2) conduct any other proceedings deemed appropriate.

**DONE AND ENTERED** in Chambers in Jacksonville, Florida this 12th day of July, 2012.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Gregory A. Presnell
United States District Court Judge

Counsel of Record